[Crim. No. 44539. Second Dist., Div. Seven. Oct. 23, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
BARRY DELSON, Defendant and Appellant.

**COUNSEL**

Tibor I. Toczauer, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Norman H. Sokolow and Shunji Asari, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**THOMPSON, J.**—Defendant Barry Delson appeals from the judgment of conviction of four counts of forgery (Pen. Code, § 470)[1] and three counts of grand theft (§ 487, subds. 1, 3), challenging his sentence to state prison. Defendant contends that the trial court abused its discretion in (1) refusing to conduct a hearing on the section 1170, subdivision (d) report and recommendation by the Department of Corrections, and (2) denying probation. We will conclude that the trial court did not err and, accordingly, will affirm the judgment.

The evidence at trial, considered in the light most favorable to the judgment, showed that on or about May 24, 1981, defendant forged a Diners Club contract and credit card application (count I). On August 7, defendant fraudulently obtained a $9,000 men's gold watch from a jewelry store by forging a sales slip and the Diners Club charge slip (counts II, IV). About a half hour later in a separate transaction, defendant fraudulently purchased a $5,500 ladies' gold watch by forging another sales slip and Diners Club charge slip (counts III, V). The watches were never recovered. On September 20, 1981, defendant fraudulently obtained possession of a 1978 Ford car from a dealer by means of a forged credit application containing spurious information, a $100 check (which bounced), and an unfulfilled prom-

---

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

ise to pay $1,400 as the remainder of the cash down payment (counts VI, VII). The car was eventually found and recovered by the dealer a month later.

At the probation and sentencing hearing on April 28, 1983, the trial court indicated it had read and considered the probation report which recommended that defendant be placed on probation for five years with one year county jail time. The court also indicated it had read and considered a detailed sentencing proposal prepared for defendant by a private nonprofit organization, the National Center on Institutions and Alternatives (NCIA), which also recommended probation. In addition, the woman who had prepared the NCIA report testified at the hearing, and a written statement by the defendant was also read and considered.

Following argument by both counsel, the court stated: "The Court feels this is a state prison case. Therefore, accordingly, defendant's formal application for probation is hereby denied. The Court pondered over this issue for two days, and the Court would like to state to the defendant that even as late as two weeks ago, his own statement[] to the probation department and the investigating officer is totally absent of any culpability in this crime in that he maintains that he operated in gray areas of the law and that his actions should primarily be punished by civil and not by criminal liability.

"He did not look at himself as a criminal, but as a person merely confused about paying his debts, and further on he goes on to say that he thought that in America they did not have debtors prison any more and his conviction and judgment and incarceration was akin to that.

"Further, he goes on to state he tried to operate within the confines of the law, although perhaps on the outer edge he felt he was never guilty of really patent wrongdoing, merely ended up with many debts he could not pay.

"The Court heard the entire . . . trial. That was totally contradicting anything that was brought out in the testimony."

The court selected the middle base term for the principal term and sentenced defendant consecutively on three subordinate offenses for a total of forty-eight months imprisonment. The court indicated its reasons for consecutive sentencing were that the crimes and their objectives were predominantly independent of each other; they were committed at different times or separate places,[2] and the convictions for which sentences were to be imposed were numerous.

---

[2]With respect to the two watches obtained in August 1981 at the jewelry shop, the court pointed out that these were two separate transactions involving two items.

The court sentenced defendant pursuant to the provisions of section 1170, subdivision (d), allowing recall and resentencing. During the probation and sentencing hearing, the court denied defendant's motion for a presentence diagnostic study pursuant to section 1203.03. The court instead ordered a postsentence diagnostic report by the Department of Corrections pursuant to section 1170, subdivision (d). Although the court granted the defense request for copies of the section 1170, subdivision (d) report, it denied the defense request that defendant be brought back for a hearing based on that report.

Subsequently, the Department of Corrections filed a favorable diagnostic report, pursuant to section 1170, subdivision (d), which, in agreement with the probation report, recommended that defendant be considered for alternative disposition and be granted probation with an appropriate county jail sentence.

On July 28, 1983, in an ex parte minute order, the trial court stated that it had received, read and considered the section 1170, subdivision (d) report and "[made] no change in its commitment order of 4/28/83."[3]

### The Trial Court Did Not Abuse Its Sentencing Discretion

 Defendant cites no authority for his contention that the court abused its discretion by refusing his request to set a hearing on the report and recommendation by the Department of Corrections pursuant to section 1170, subdivision (d). Nor has our research disclosed any. To the contrary, our review of the statutory scheme and relevant case law reveals that the trial court did not err in denying defendant's request at the sentencing hearing and considering the section 1170, subdivision (d) report in an ex parte proceeding.

Section 1170, subdivision (d) provides in pertinent part: "When a defendant subject to this section or subdivision (b) of Section 1168 has been sentenced to be imprisoned in the state prison and has been committed to the custody of the Director of Corrections, the court may, within 120 days of the date of commitment on its own motion, or at any time upon the recommendation of the Director of Corrections or the Board of Prison Terms, recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he had not previously been sentenced . . . ."

---

[3]Pursuant to California Rules of Court, rule 12(a) we have augmented the record to include the superior court file.

By its terms, the statute does not provide for a hearing on the post sentence report and recommendation of the Department of Corrections. In contrast, subdivision (f) of that same Penal Code section (1170) expressly provides that the court "shall schedule a hearing" upon a finding by the Board of Prison Terms that a sentence is disparate. The absence of any similar language in subdivision (d) indicates the Legislature did not intend to require a hearing under that provision. (See *People* v. *Herrera* (1982) 127 Cal.App.3d 590 [179 Cal.Rptr. 694].)

Moreover, there is a long-standing practice of ex parte consideration of such a Department of Corrections' postsentence diagnostic report, dating back to former section 1168, the predeterminate sentence law statutory predecessor of section 1170, subdivision (d). (See Cal. Criminal Law Practice (Cont.Ed.Bar 1969) § 19.121, pp. 207-208; Proceedings of the First Sentencing Institute for Superior Court Judges (1965) 45 Cal.Rptr. Appen. 64.) As our Supreme Court noted in discussing former section 1168, one of the factors which may lead a court to employ the postsentence diagnostic report procedure, rather than the alternative presentence diagnostic procedure of section 1203.03, is to "sav[e] the cost of the defendant's return trip to court for sentencing where the court thinks a prison sentence is appropriate." (*Holder* v. *Superior Court* (1970) 1 Cal.3d 779, 782, fn. 3 [83 Cal.Rptr. 353, 463 P.2d 705].) Section 1170, subdivision (d) contains the same material language as former section 1168, which it replaced, and has been similarly construed. (See *People* v. *Roe* (1983) 148 Cal.App.3d 112, 116-117 [195 Cal.Rptr. 802]; *People* v. *Gainer* (1982) 133 Cal.App.3d 636, 639-641, and fn. 3 [184 Cal.Rptr. 120].) It is evident that had the Legislature intended to depart from tradition and create a new procedural requirement for a hearing in enacting section 1170, subdivision (d), it would have explicitly said so.

Our determination that no hearing was required herein is further reinforced by the absence of any statutory requirement that a copy of the diagnostic study and recommendation be furnished to a prisoner and the fact that a prisoner under section 2081.5 is not among those who have access to the records of the Department of Corrections reports which would indicate the diagnostic findings. (See *Alanis* v. *Superior Court* (1970) 1 Cal.3d 784, 786 [83 Cal.Rptr. 355, 463 P.2d 707].) In the case herein, the court chose to grant the defense request for a copy of the report but it had no statutory obligation to do so. If a hearing requirement were contemplated under section 1170, subdivision (d), the Legislature would have required copies to be served on the defense as it has done with the Board of Prison Terms disparity findings under section 1170, subdivision (f), and the Department of Corrections' presentence diagnostic reports under section 1203.03.

■ Like former section 1168, section 1170, subdivision (d) represents a limited statutory exception to the general rule that a trial court loses jurisdiction to reconsider a denial of probation or vacate or modify the sentence when a defendant is committed and execution of sentence begins. (*People* v. *Roe, supra,* 148 Cal.App.3d at p. 116.) That provision merely authorizes the court to recall a prison sentence and commitment and resentence the defendant under certain conditions. It is permissive, not mandatory. Indeed, although a defense counsel may indirectly request the court to order a postsentence diagnostic report by the Department of Corrections, a defendant has no right to initiate the section 1170, subdivision (d) proceedings himself. (*People* v. *Gainer, supra,* 133 Cal.App.3d at p. 641; *People* v. *Laue* (1982) 130 Cal.App.3d 1055, 1060 [182 Cal.Rptr. 99].) He does not even have standing to file a motion for recall of the sentencing commitment or to appeal denial of such a motion. (*People* v. *Gainer, supra*; *People* v. *Druschel* (1982) 132 Cal.App.3d 667, 669 [183 Cal.Rptr. 348].)

■ Accordingly, in view of all the above, we are satisfied that the trial court did not abuse its discretion in refusing to set a hearing on the Department of Corrections' recommendation.

■ There is also no merit to defendant's contention that the trial court abused its discretion in denying probation. ■ A denial or a grant of probation generally rests within the broad discretion of the trial court and will not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary or capricious manner. (*People* v. *Edwards* (1976) 18 Cal.3d 796, 807 [135 Cal.Rptr. 411, 557 P.2d 995]; *People* v. *Hernandez* (1980) 111 Cal.App.3d 888, 898 [168 Cal.Rptr. 898].) No such showing has been made here.

■ The court adequately stated reasons for its sentence choice of imprisonment rather than probation during the course of the sentencing hearing which fulfilled the legislative purpose of providing meaningful review. (See *People* v. *Lock* (1981) 30 Cal.3d 454, 459 [179 Cal.Rptr. 56, 637 P.2d 292]; *People* v. *Powell* (1980) 101 Cal.App.3d 513, 519 [161 Cal.Rptr. 803].) In denying probation and indicating this was a "state prison case" the court, as the previously recited facts show, pointed to defendant's apparent lack of remorse and unwillingness to face the seriousness of his conduct. Defendant's appreciation of and attitude towards his offenses was a relevant factor in determining whether he was a suitable candidate for probation. (See *People* v. *Fowler* (1980) 109 Cal.App.3d 557, 566 [167 Cal.Rptr. 235], overruled on other grounds in *People* v. *Humphrey* (1982) 138 Cal.App.3d 881, 883 [188 Cal.Rptr. 473].) California Rules of Court,

rule 414(d)(9) expressly lists the factor of "[w]hether a defendant is re- morseful" as a criterion affecting the grant or denial of probation. (See also *People* v. *Gaskill* (1980) 110 Cal.App.3d 1, 6 [167 Cal.Rptr. 549].) ██ ██ ██ ██ In addition, further reasons relating to the nature and cir- cumstances of defendant's offenses (see Cal. Rules of Court, rule 414(c)(1)) were articulated by the court for imposing consecutive prison sentencing, and thereby, by necessary implication, for denying probation.[4] ██ Thus the court stated that it was also basing its sentence decision on the fact that defendant had committed four different offenses with independent objectives in separate transactions. The record shows that the trial court considered all the factors argued by the defense and prosecution. It did not have to affir- matively state on the record that aggravating factors outweighed mitigating factors.

The trial court herein had read and considered the probation report and referred to it during the sentencing hearing. ██ It was not required to adopt the report's favorable recommendation. (*People* v. *Hernandez, supra,* 111 Cal.App.3d at p. 898.) Such a recommendation is advisory only, pro- vided in order to aid the sentencing court in determining an appropriate disposition, and may be rejected in its entirety. (*People* v. *Warner* (1978) 20 Cal.3d 678, 683 [143 Cal.Rptr. 885, 574 P.2d 1237]; *People* v. *Server* (1981) 125 Cal.App.3d 721, 728 [178 Cal.Rptr. 206].) Nor was the court required to recall the sentence and grant probation because of the favorable section 1170, subdivision (d) report by the Department of Corrections. Such a diagnostic study recommendation is not binding upon the court. (Cf. *Peo- ple* v. *Vargas* (1975) 53 Cal.App.3d 516, 533 [126 Cal.Rptr. 88] [§ 1203.03 presentence diagnostic study not binding].)

We recognize that there were ample facts before the court to warrant a grant of probation and that all three reports—probation, Department of Cor- rections, and defense prepared NCIA—recommended such a grant. But the fact that reasonable minds, even the individuals on this court, might come to that conclusion, does not warrant an interference with the discretion ex- ercised by the sentencing court where, as here, it has properly considered the facts bearing on the offense and defendant and has adequately stated reasons for its sentence choice. (See *People* v. *Vargas, supra.*)

---

[4]There is no prohibition to the use of the same facts for denying probation and imposing consecutive sentences. (Cal. Rules of Court, rule 441(a); *People* v. *Jones* (1980) 110 Cal.App.3d 75, 77-78 [167 Cal.Rptr. 571].) Furthermore, " 'the time for sentencing' " dur- ing which reasons for sentence choice must be given encompasses the entire probation and sentencing hearing in which sentence is imposed. (*People* v. *Powell, supra,* 101 Cal.App.3d at p. 519.)

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied November 20, 1984, and appellant's petition for a hearing by the Supreme Court was denied January 30, 1985.