Filed 9/30/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B301267 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA076295) |
| v. | |
| GENE McCALLUM, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Salvatore Sirna, Judge. Reversed and remanded with directions.

Milena N. Blake and Michael Romano for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Jaime L. Fuster and Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Penal Code section 1170, subdivision (d)(1),[1] authorizes the trial court to modify a defendant's sentence upon a recommendation from the Secretary of the Department of Corrections and Rehabilitation (Department), the Board of Parole Hearings, or the district attorney to "recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced . . . ." After serving 12 years of his third strike sentence of 30 years to life for residential burglary, the Secretary of the Department recommended McCallum's sentence be recalled and McCallum be resentenced based on his violation-free conduct while in prison and his completion of nine college classes, a substance abuse program, and other counseling and self-awareness programs. Upon receiving the recommendation from the Secretary, McCallum's attorney requested the court hold a case management conference to discuss the Secretary's recommendation, and if necessary, to set a briefing and hearing schedule.

The trial court considered the Secretary's recommendation and supporting materials, but in a minute order it declined to exercise its discretion to recall McCallum's sentence. The court acknowledged McCallum's efforts to take substance abuse counseling and academic classes while in prison, but it noted McCallum's family and community support was "tenuous, with no identifiable base of support." The court did not hold a case management conference or hearing, and it did not provide McCallum or the People an opportunity to submit additional information for the court's consideration. McCallum contends on

_____

[1]     Further statutory references are to the Penal Code.

2

appeal he had a due process right to a hearing, and further, the trial court abused its discretion in failing to allow him to submit additional information on changed circumstances since he was first sentenced. McCallum asserts he would have submitted, among other information, documentation showing he had been accepted into a substance abuse and mental health inpatient counseling program upon his release, providing the community support the court found lacking.

We conclude the statutory language of section 1170, subdivision (d)(1), read in the context of section 1170 as a whole, shows the Legislature did not intend to require a trial court to hold a hearing before acting on a recommendation by the Secretary for recall and resentencing. It is up to the Legislature to address in the first instance whether an inmate should be afforded a hearing in response to a recommendation by the Secretary for recall and resentencing.

However, in light of McCallum's substantial right to liberty implicated by the Secretary's recommendation to recall McCallum's sentence (*People v. Loper* (2015) 60 Cal.4th 1155, 1158, 1163 (*Loper*)), the trial court abused its discretion in denying McCallum an opportunity to present information relevant to the Secretary's recommendation. Further, the trial court based its rejection of the Secretary's recommendation in part on a finding that McCallum had no family or community support, apparently relying on information provided by the Secretary showing McCallum did not have visitors during his 12 years in prison. Whether McCallum would have family and community support upon his release is precisely the type of information that would be known to McCallum, not the Department. We reverse and remand for the trial court to allow

3

McCallum and the People an opportunity to present additional information relevant to the Secretary's recommendation, and for the trial court in light of this information and any briefing provided by the parties to exercise its discretion whether to recall McCallum's sentence. If the court recalls McCallum's sentence, he would have a right to be present at a resentencing hearing.

**FACTUAL AND PROCEDURAL BACKGROUND**

A. *The Residential Burglary and Sentencing*

On the morning of September 5, 2006 Brandi Irick left her room at the Evergreen Inn to do her laundry. When she returned, she discovered someone had locked the deadbolt to her door from the inside. As the manager was assisting Irick to open the door, McCallum unlocked the door and walked out of the room. McCallum had been staying with another resident of the motel. When Irick asked McCallum why he was inside her room, he responded he needed to use the restroom. McCallum appeared to be under the influence of alcohol. Irick observed the window screen near the door to her room had been broken. Further, a coin purse Irick had left closed on the table was open and on the bed; her overnight bag had been moved; and a bottle of hand cream had been taken from the overnight bag and left on the sink. The bed covers had been pulled back. The manager and another resident detained McCallum. Los Angeles County Sheriff's Deputy Gregory Carr responded to the scene and placed McCallum under arrest. Deputy Carr described McCallum as "kind of spacey, mentally ill." McCallum admitted to Deputy Carr he had entered Irick's room and knew it was wrong, but he again claimed he entered to use the bathroom. (*People v.*

4

*McCallum* (Aug. 27, 2008, B199212) [nonpub. opn.]
(*McCallum I*).)

> After a court trial, McCallum was convicted of first degree residential burglary (§ 459), and the court found true the allegations McCallum suffered two prior convictions of violent or serious felonies under the three strikes law (§§ 667, subds. (b)-(i), 1170.12), one of which was a serious felony within the meaning of section 667, subdivision (a)(1).[2] The court denied McCallum's motion to strike his prior convictions, noting McCallum had been convicted 17 times of various offenses, including two robberies, theft, battery, and drug offenses. Further, he had violated probation and parole on numerous occasions. The court acknowledged McCallum had a substance abuse problem, but McCallum had never addressed his addiction. The court sentenced McCallum to 25 years to life plus five years for the prior serious felony conviction enhancement under section 667, subdivision (a)(1). This court affirmed. (*McCallum I, supra*, B199212.)

B.    *The Secretary's Recommendation To Recall McCallum's Sentence and Resentence Him*

> On May 21, 2019 the Secretary sent a letter to the trial court recommending McCallum's sentence be recalled and he be

---

[2]    Although the trial court initially found both prior robbery convictions were serious felonies within the meaning of section 667, subdivision (a)(1), it later concluded they were not tried separately, and it imposed only one 5-year term.

resentenced pursuant to section 1170, subdivision (d)(1).[3] The Secretary "commended [McCallum] for remaining disciplin[e] free since being received to [state prison] on May 4, 2007." The letter highlighted that McCallum was taking college classes while in custody and had been "commended for his academic accomplishments." McCallum also successfully completed a drug and alcohol treatment program in prison. The Secretary attached to the letter a five-page cumulative case summary and evaluation report (cumulative case summary), the abstract of judgment, minute orders, the amended information and felony complaint, a Division of Adult Parole Operations checklist of pre- and postrelease services, and a Department handout answering "frequently asked questions" about section 1170, subdivision (d)(1).

The cumulative case summary described McCallum's commitment offense, extensive adult criminal history, and parole violations. During the period from 1990 to 2004, McCallum was convicted of being under the influence of alcohol or drugs while in a vehicle (two convictions), two robberies (the two prior strikes), possession of alcohol by a business, urinating in public, two petty thefts with priors, battery, and grand theft. In connection with his 1998 conviction for petty theft with priors, McCallum violated his parole on five occasions.

McCallum did not receive any rules violations reports during his 12 years in prison. He completed numerous courses offered by Patten University at San Quentin, including classes in

---

[3] The Secretary's letter was addressed to Judge Charles Horan, who tried the case and sentenced McCallum in 2007. Judge Horan retired in 2011, and the case was assigned to Judge Salvatore Sirna.

English, macroeconomics, statistics, algebra, and precalculus, and he completed an adult school program in computer literacy. McCallum also participated in various cultural, recreational, and educational groups and completed programs addressing self-awareness, addiction recovery, and anger management. Further, he completed a 13-session substance abuse program.

McCallum was approved for three relatives or associates to visit him, but he did not receive any visits while in prison. The cumulative case summary noted two letters of support, one from an unknown source dated February 6, 2019 "pledging full support of McCallum to ensure a successful parole by assisting with a residence, insurance, transportation, and work with and stay in contact with all release support programs," and a June 2017 letter of support from a substance recovery program acknowledging he completed an addiction recovery counseling drug and alcohol treatment program while in prison. McCallum is eligible for parole as of April 15, 2029 and for elderly parole on August 21, 2031.

The Secretary sent the recommendation and cumulative case summary to the district attorney's office and the public defender's office. On June 4, 2019 McCallum's attorney lodged in the trial court a notice of appearance and a separate motion for case management conference.[4] The motion requested "a case management conference with the [c]ourt and [d]istrict [a]ttorney to discuss [the Department's] recommendation and, if necessary,

---

[4] On our own motion we augment the record to include the notice of appearance and motion for case management conference, both marked received by the trial court on July 8, 2019. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

set a briefing and hearing schedule for the matter." A case management conference was never held.

C.   *The Trial Court's Ruling on the Secretary's Recommendation*

The trial court "read and considered" the Secretary's recommendation and supporting documents, and in a July 8, 2019 minute order the court "decline[d] to exercise its discretion to recall the sentence under [section] 1170(d)." The court noted McCallum's criminal history showed his "extensive drug use, theft crimes of increasing severity and physical violence," as well as five violations of parole. The court acknowledged "McCallum has endeavored to take several academic classes, including substance abuse court." But the court concluded it was "not inclined to exercise its discretion to recall Mr. McCallum's sentence based on these classes. Further, family and community support for Mr. McCallum is tenuous, with no identifiable base of support." The minute order reflects McCallum was not present in court "and not represented by counsel."[5] The court clerk served copies of the minute order on McCallum, his attorney, and the Secretary.

On September 6, 2019 McCallum timely appealed.

---

[5] McCallum argues this statement shows the trial court mistakenly believed McCallum was not represented by counsel. But as noted by the People, the trial court served McCallum's attorney with the minute order. In any event, whether the trial court at the time of its denial of the Secretary's recommendation believed McCallum was represented by counsel does not affect our analysis.

8

**DISCUSSION**

A. *Governing Law and Standard of Review*

"Section 1170(d) is an exception to the common law rule that the court loses resentencing jurisdiction once execution of sentence has begun." (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 455 (*Dix*); accord, *People v. Delson* (1984) 161 Cal.App.3d 56, 62 (*Delson*) ["[S]ection 1170, subdivision (d) represents a limited statutory exception to the general rule that a trial court loses jurisdiction to reconsider a denial of probation or vacate or modify the sentence when a defendant is committed and execution of sentence begins."].) Section 1170, subdivision (d), enacted in 1976 as part of the Determinate Sentencing Act (*Dix*, at p. 455), provides "the court may, within 120 days of the date of commitment on its own motion, or at any time upon the recommendation of the secretary or the Board of Parole Hearings in the case of state prison inmates, the county correctional administrator in the case of county jail inmates, or the district attorney of the county in which the defendant was sentenced, recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence." (§ 1170, subd. (d)(1).)[6] Section 1170, subdivision (d)(1), provides further as to resentencing that the court "shall apply the sentencing rules of

---

[6] The version of section 1170, subdivision (d)(1), in effect at the time of the trial court's ruling was identical to the current section, except that it used the words "he or she," which were changed to "they" effective August 6, 2020. (§ 1170, former subd. (d)(1).)

9

the Judicial Council so as to eliminate disparity of sentences and to promote uniformity of sentencing. The court resentencing under this paragraph may reduce a defendant's term of imprisonment and modify the judgment, including a judgment entered after a plea agreement, if it is in the interest of justice."

In deciding whether to recall a sentence under section 1170, subdivision (d)(1), the trial court may exercise its authority "for any reason rationally related to lawful sentencing." (*Dix*, *supra*, 53 Cal.3d at p. 456.) Further, section 1170, subdivision (d)(1), expressly authorizes the court in resentencing a defendant to consider "postconviction factors, including, but not limited to, the inmate's disciplinary record and record of rehabilitation while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the inmate's risk for future violence, and evidence that reflects that circumstances have changed since the inmate's original sentencing so that the inmate's continued incarceration is no longer in the interest of justice."

We review the trial court's decision whether to recall a defendant's sentence for an abuse of discretion. (*Delson, supra*, 161 Cal.App.3d at p. 62 [trial court did not abuse its discretion in refusing to set a hearing on Department's recommendation under § 1170, former subd. (d), for recall of defendant's sentence and resentencing based on postsentence diagnostic report]; see *People v. Gibson* (2016) 2 Cal.App.5th 315, 324-325 [applying abuse of discretion standard to trial court's decision whether to recall a defendant's sentence as a youth offender under § 1170, subd. (d)(2), describing the subdivision's language allowing recall and resentencing as "permissive"].) "'Where, as here, a discretionary power is statutorily vested in the trial court, its

10

exercise of that discretion "must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]'" [Citation.] The abuse of discretion standard 'involves abundant deference' to the court's ruling." (*People v. Jefferson* (2016) 1 Cal.App.5th 235, 242-243; accord, *People v. Miracle* (2018) 6 Cal.5th 318, 346-347.) We review questions of statutory construction de novo. (*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 188; *John v. Superior Court* (2016) 63 Cal.4th 91, 95; see *Martinez v. Board of Parole Hearings* (2010) 183 Cal.App.4th 578, 587 [reviewing interpretation of § 1170, subd. (e), de novo].)[7]

B.      *McCallum Is Not Entitled to a Hearing Under Section 1170, Subdivision (d)(1)*

"Our primary task 'in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.] We consider first the words of a statute, as the most reliable indicator of legislative intent.'" (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1041; accord, *In re A.N.* (2020) 9 Cal.5th 343, 351-352.) "'"We interpret relevant terms in light of their ordinary meaning, while also taking account of any related provisions and

---

[7]      The People do not dispute that the trial court's order is an appealable order. (See *Loper, supra*, 60 Cal.4th at pp. 1158, 1163; see also § 1237, subd. (b) [postconviction orders implicating a defendant's "substantial rights" are appealable]; *Gray v. Superior Court* (2016) 247 Cal.App.4th 1159, 1164 ["It is plain that a defendant's 'substantial rights' include personal liberty interests."].)

11

the overall structure of the statutory scheme to determine what interpretation best advances the Legislature's underlying purpose.'" [Citations.] 'If we find the statutory language ambiguous or subject to more than one interpretation, we may look to extrinsic aids, including legislative history or purpose to inform our views.'" (*In re A.N.*, at pp. 351-352; accord, *ZB, N.A. v. Superior Court, supra*, 8 Cal.5th at p. 189 ["We consider the provisions' language in its 'broader statutory context' and, where possible, harmonize that language with related provisions by interpreting them in a consistent fashion. [Citation.] If an ambiguity remains after this preliminary textual analysis, we may consider extrinsic sources such as legislative history and contemporaneous administrative construction."].)

Section 1170, subdivision (d)(1), is silent as to whether the trial court must hold a hearing prior to ruling on the Secretary's recommendation for recall and resentencing. We therefore interpret subdivision (d)(1) in light of the language used in other subdivisions of section 1170. (See *Digital Realty Trust, Inc. v. Somers* (2018) ___ U.S. ___ [138 S.Ct. 767, 777] ["'[W]hen Congress '"includes particular language in one section of a statute but omits it in another[,] . . . this Court presumes that Congress intended a difference in meaning.'"]; *Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 727 [interpreting statutory provision excluding period civil action was stayed from five-year limit for civil case to be brought to trial not to include a partial stay where Legislature in companion provision explicitly referred to a partial stay, explaining the difference "shows the Legislature knows how to specifically reference a partial stay, in addition to a complete stay, when that is its intent"]; *People v. Trevino* (2001) 26 Cal.4th 237, 242

[“When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning.”].)

A review of section 1170 shows the Legislature was well aware of what language to use to require the trial court to hold a hearing before acting on a recommendation or petition to recall a sentence. For example, section 1170, subdivision (e), authorizes the Secretary to recommend recalling an inmate's sentence if the inmate is “terminally ill with an incurable condition” or “permanently medically incapacitated.” (§ 1170, subd. (e)(2)(A), (C).) Subdivision (e)(3) of section 1170 provides that upon receiving a positive recommendation from the Secretary, “the court shall hold a hearing to consider whether the prisoner's sentence should be recalled.” Section 1170, former subdivision (f), likewise provided that within one year after a defendant's prison term commenced, the Board of Prison Terms was required to review the sentence to determine “comparative disparity” relative to other defendants' sentences. (*Dix, supra*, 53 Cal.3d at p. 458.)[8] The subdivision provided that within 120 days of the trial court being notified of a determination of disparity, the “court ‘*shall* schedule a hearing and [after considering the Board's information] may recall the sentence and commitment . . . and resentence the defendant in the same manner as if the defendant had not been sentenced

---

[8]     The provision in section 1170, former subdivision (f), that required the Board of Prison Terms to review sentences for comparative disparity was deleted as part of a 1992 amendment.

13

previously . . . .'" (*Dix*, at p. 458, quoting § 1170, former subd. (f)(1).)[9]

As this court concluded in *Delson, supra*, 161 Cal.App.3d at pages 60 to 61, in considering whether the trial court was required to hold a hearing under section 1170, former subdivision (d), prior to rejecting a recommendation by the Department to recall and resentence the defendant based on a postsentence diagnostic report, "By its terms, the statute does not provide for a hearing on the post sentence report and recommendation of the Department of Corrections.  In contrast, [former] subdivision (f) of that same Penal Code section (1170) expressly provide[d] that the court 'shall schedule a hearing' upon a finding by the Board of Prison Terms that a sentence is disparate.  The absence of any similar language in subdivision (d) indicates the Legislature did not intend to require a hearing under that provision."  Further, "[i]t is evident that had the

_____

[9]    The Supreme Court in *Dix, supra*, 53 Cal.3d at page 459, footnote 13, in analyzing section 1170, stated in dicta, "Section 1170(d) allows the sentencing court to recall and resentence at any time upon recommendation of the Board [of Prison Terms] or the Director [of the Department], but unlike section 1170, [former] subdivision (f), it does not require the court to 'consider' any such recommendation."  The *Dix* court similarly observed (again, in dicta), that section 1170, subdivision (d), "apparently does not require the court to respond to the [Secretary's] recommendation." (*Dix*, at p. 459.)  We question whether the Legislature intended for a trial court simply to ignore a recommendation from the Secretary to recall an inmate's sentence.  Further, this would be inconsistent with the conclusion in *Loper, supra*, 60 Cal.4th at page 1167 that a defendant may appeal from a trial court's denial of recall and resentencing under section 1170, subdivision (d).

14

Legislature intended to depart from tradition and create a new procedural requirement for a hearing in enacting section 1170, subdivision (d), it would have explicitly said so." (*Delson*, at p. 61.)[10]

McCallum relies heavily on *People v. Superior Court* (*Kaulik*) (2013) 215 Cal.App.4th 1279, 1286, which interpreted Proposition 36 (the Three Strikes Reform Act of 2012; § 1170.126) to require notice and an opportunity to be heard before a trial court finds a defendant does not pose an unreasonable risk of danger to public safety and grants a petition for recall and resentencing.[11] McCallum's analogy to Proposition 36 is not

_____

[10] Section 1170, subdivision (d)(2)(A)(i), which authorizes youth offenders to petition the court to recall their sentences and resentence them, like subdivision (d)(1), provides for a hearing for resentencing, not the initial recall of sentence. The subdivision provides if the court finds by a preponderance of evidence that at least one of the criteria for recall is met, "the court shall recall the sentence and commitment previously ordered and hold a hearing to resentence the defendant in the same manner as if the defendant had not previously been sentenced . . . ." (§ 1170, subd. (d)(2)(E).)

[11] Proposition 36, approved by the voters in the General Election on November 6, 2012, "narrowed the class of third strike felonies for which an indeterminate sentence could be imposed" by providing a defendant convicted of a nonstrike offense "can receive at most a sentence enhancement of twice the term otherwise provided as punishment for that felony." (*People v. Perez* (2018) 4 Cal.5th 1055, 1062; accord, *People v. Johnson* (2015) 61 Cal.4th 674, 679.) Inmates who have been sentenced under the three strikes law for a nonserious, nonviolent felony may petition the trial court for resentencing as second strike offenders. (§ 1170.126, subds. (a), (b); see *Perez*, at p. 1062.)

15

persuasive.  Unlike the permissive language in section 1170, subdivision (d)(1) (the court "may" recall the sentence), section 1170.126, subdivision (f), provides, upon the defendant's filing of a petition, the court "shall" determine whether the defendant meets the criteria for recall and resentencing, and if the criteria are satisfied, the defendant "shall be resentenced" unless the court in its discretion determines the petitioner would pose an unreasonable risk of danger to public safety after considering the factors set forth in section 1170.126, subdivision (g).  The *Kaulick* court concluded the statute's inclusion of factors for the court to consider in making the finding of dangerousness required information that would be in the possession of the prosecutor and not otherwise available to the court, including the petitioner's disciplinary record and record of rehabilitation, and therefore "[e]ven if the statutory language did not expressly contemplate a hearing, one is implied by the listing of factors which the court is to take into account in its determination of the dangerousness issue." (*Kaulick*, at p. 1297, fn. omitted; see *People v. Bradford* (2014) 227 Cal.App.4th 1322, 1341 ["The determination [of petitioner's dangerousness] necessarily involves input from the parties and will likely result in a contested hearing."].)

---

Upon receiving a petition for resentencing, the trial court "shall determine whether the petitioner satisfies the criteria" as listed in the statute.  (§ 1170.126, subd. (f).)  If the criteria are met, the petitioner "'shall be resentenced . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.'" (*People v. Conley* (2016) 63 Cal.4th 646, 658.)

16

McCallum also argues the 2018 amendments to section 1170, subdivision (d)(1), which added a list of postconviction factors the trial court "may" consider, is analogous to the three factors the court "may consider" in exercising its discretion under section 1170.126, subdivision (g), to determine whether a petitioner poses an unreasonable risk of danger. But the listing of factors in section 1170, subdivision (d)(1), does not alter the fact the trial court has discretion whether to recall and resentence the defendant. By contrast, as discussed, under Proposition 36 the trial court "shall" resentence the defendant upon a finding of eligibility, with an exception carved out where the court determines the petitioner poses an unreasonable risk of danger. (§ 1170.126, subd. (f).)

Moreover, we read the inclusion of postconviction factors in section 1170, subdivision (d)(1), as providing guidance for the trial court's resentencing decision, not its initial decision whether to recall the sentence. The postconviction factors were added in 2018 by Assembly Bill No. 1812 (2017-2018 Reg. Sess.), section 17. Notably, Assembly Bill No. 1812 placed the sentence containing the postconviction factors immediately following the second and third sentences of section 1170, subdivision (d)(1), both of which set limitations on the trial court's resentencing authority. We consider this structure of section 1170, subdivision (d)(1), in interpreting the purpose of inclusion of the postconviction factors. (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 144 ["[W]e interpret statutory language within its context, and in light of its structure, analogous provisions, and any other appropriate indicia of its purpose."]; see *KB Home Greater Los Angeles, Inc. v. Superior Court* (2014) 223 Cal.App.4th 1471, 1477 [interpreting statute to require

notice to a builder before repairs are made, noting "sequential procedure" set forth in statute].)  Further, the legislative history accompanying Assembly Bill No. 1812 describes the amendment of section 1170, subdivision (d)(1), as "authoriz[ing] the courts to consider specific post-conviction factors when resentencing a defendant."  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1812 (2017-2018 Reg. Sess.) as amended June 12, 2018, p. 3.)

McCallum's reliance on cases holding a defendant has a due process right to a hearing on remand for a trial court to exercise its resentencing discretion is similarly misplaced.  (See, e.g., *People v. Rodriguez* (1998) 17 Cal.4th 253, 255 [defendant has right to a hearing on remand for the trial court to exercise its discretion whether to strike a prior felony conviction under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497]; *People v. Rocha* (2019) 32 Cal.App.5th 352, 355 [defendant has a right to a hearing on remand for the trial court to exercise its discretion whether to strike a firearm enhancement under amendments to § 12022.53, subd. (h), enacted as part of Senate Bill No. 620 (2017-2018 Reg. Sess.)].)  As the Supreme Court in *Rodriguez* explained, "Because to permit the trial court to decide how to exercise its discretion under section 1385 without affording defendant and his counsel an opportunity to address the subject would be manifestly unfair, section 1260 provides sufficient authority to require defendant's presence on remand.  A defendant, of course, has a constitutional right to be present at all critical stages of the criminal prosecution, i.e., 'all stages of the trial where his absence might frustrate the fairness of the proceedings.'"  (*Rodriguez*, at p. 260.)

18

The question before us is not whether McCallum has a right to be present at a resentencing hearing if the trial court determines his sentence should be recalled—he does—but whether the court must hold a hearing before determining whether to recall McCallum's sentence in the first place. As the Supreme Court observed in *Dix, supra*, 53 Cal.3d at page 456, "Once the sentence and commitment have validly been recalled, section 1170(d) authorizes the court to 'resentence . . . *in the same manner as if [the defendant] had not previously been sentenced* . . . .' [T]he resentencing authority conferred by section 1170(d) is as broad as that possessed by the court when the original sentence was pronounced." The *Dix* court made clear a defendant has a right to a resentencing hearing, explaining that after recalling the sentence under section 1170, subdivision (d), the victim would also have a "right to attend sentencing proceedings and express his or her views." (*Dix*, at p. 463.)[12] The fact a defendant has a right to a resentencing hearing, however, does not mean the defendant has a right to a hearing on whether to recall his or her sentence. (See *People v. Oehmigen* (2014) 232 Cal.App.4th 1, 6 [Proposition 36 accords "the right to a *resentencing hearing* only upon a showing that he is *eligible*," but it does not provide "a right to a hearing on the issue of eligibility"]; *People v. Bradford, supra*, 227 Cal.App.4th at p. 1337 [§ 1170.126 "does not expressly require the trial court to hold a hearing before considering the eligibility criteria, nor is

---

[12]     As discussed, section 1170, subdivision (d)(1), also requires the court in resentencing the defendant to apply the Judicial Council's sentencing rules. The Judicial Council's sentencing rules require a sentencing hearing. (Cal. Rules of Court, rule 4.433(a).)

there a reference to the taking of 'evidence' or other proceeding that would compel involvement by the parties"].)

C. *The Trial Court Abused Its Discretion in Rejecting the Secretary's Recommendation Without Allowing McCallum To Present Additional Information Relevant to the Secretary's Recommendation*

McCallum contends the trial court abused its discretion in rejecting the Secretary's recommendation without first allowing him to submit information necessary for the court to exercise its discretion whether to follow the recommendation. The People respond there was no abuse of discretion because the trial court considered the Secretary's extensive cumulative case summary describing McCallum's postconviction conduct in prison, but it determined his record was not sufficient to support recall of his sentence. McCallum has the better argument. Once McCallum requested an opportunity to respond to the Secretary's recommendation by requesting a case management conference and possible briefing and presentation of evidence,[13] the trial court's decision simply to ignore McCallum's request to provide input on the Secretary's recommendation was an abuse of discretion.

The Supreme Court's decision in *Loper, supra*, 60 Cal.4th 1155 is instructive. The *Loper* court considered whether a

---

[13] Although McCallum specifically requested a hearing in his case management conference, in light of our conclusion a hearing was not required, we read McCallum's request as one seeking an opportunity to submit additional information relevant to the Secretary's recommendation and briefing addressing why the trial court should follow the recommendation.

20

defendant could appeal a trial court's ruling denying the recommendation by the Department to recall the defendant's sentence pursuant to the compassionate release provisions of section 1170, subdivision (e).  The Supreme Court held the defendant had a right to appeal the trial court's denial of compassionate release pursuant to section 1237, subdivision (b), because the court's denial "was an order made after judgment that affected [the] defendant's substantial rights."  (*Loper*, at pp. 1158, 1168.)  In reaching this conclusion, the Supreme Court disapproved two opinions that held the defendant could not appeal denial of his motion to recall his sentence under section 1170, former subdivision (d) (and the predecessor statute), on the basis the statute did not authorize the defendant to initiate a request to recall a sentence.  (*Loper*, at pp. 1166-1167, disapproving *People v. Druschel* (1982) 132 Cal.App.3d 667 and *People v. Niren* (1978) 76 Cal.App.3d 850, 851.)  The *Loper* court analogized a defendant's right to seek recall of his or her sentence under section 1170, subdivision (d)(1), to a defendant's right to invite a trial court to exercise its power to strike a count or allegation of an accusatory pleading, explaining, ""[T]he court must consider evidence offered by the defendant in support of his assertion that the dismissal would be in furtherance of justice.""" (*Loper*, at p. 1167, quoting *People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).)

Although McCallum could not invite the trial court to recall his sentence absent a recommendation by the Secretary (unless he had made the request within 120 days of his commitment), here the trial court had jurisdiction to recall McCallum's sentence because the Secretary made precisely such a recommendation. Thus, as in *Carmony*, upon a request by McCallum, the trial

21

court was required to consider evidence in support of the Secretary's recommendation.

Allowing McCallum to submit additional information showing his rehabilitation and reentry plans is also consistent with the Legislature's express findings and declarations for section 1170, amended in 2016 (effective January 1, 2017) as part of Assembly Bill No. 2590 (2015-2016 Reg. Sess.), explaining "the purpose of sentencing is public safety achieved through punishment, rehabilitation, and restorative justice." (§ 1170, subd. (a)(1).)[14]  Further, Assembly Bill No. 2590 amended section 1170, subdivision (a)(2), to declare that the Department should make available for inmates "educational, rehabilitative, and restorative justice programs that are designed to promote behavior change and to prepare all eligible offenders for successful reentry into the community" and develop "policies and programs designed to educate and rehabilitate all eligible offenders."

Moreover, the only evidence before the court that arguably supported its finding McCallum had "tenuous" family and community support was the fact presented in the cumulative case summary that McCallum did not have visitors during his 12 years in prison.[15]  As McCallum's attorney pointed out at oral

---

[14]  Section 1170, former subdivision (a)(1) previously declared, "The Legislature finds and declares that the purpose of imprisonment for crime is punishment."

[15]  The Department appears to have prepared the cumulative case summary pursuant to its current regulations that became operative on January 1, 2020, which require the cumulative case summary to include:  "1. Inmate's name and CDCR number; [¶] 2. Current commitment offense, brief description of the crime,

22

argument, a defendant may have no visitors for a variety of reasons unrelated to family and community support, including the distance from the defendant's home to his or her place of incarceration (here at San Quentin State Prison in Northern California). Indeed, had the trial court allowed McCallum to submit additional information before declining to recall his sentence, the court likely would have learned the facts were to the contrary—that McCallum had been accepted into an

---

and sentence; [¶] 3. County of commitment; [¶] 4. Summary of sustained juvenile petitions and adult criminal convictions; [¶] 5. Active or potential holds, warrants, and detainers; [¶] 6. Institutional behavior, including serious rules violation reports, drug test results, gang or disruptive group information, placement score, current housing assignment, a summary of work and educational assignments, and participation in rehabilitative programs and self-help activities; [¶] 7. Inmate visitor history (number of approved visitors and number of visits made during incarceration); [¶] 8. Victim notification requirements; [¶] 9. Other legally mandated notification requirements; and [¶] 10. A copy of the Abstract of Judgment and minute order for the inmate's current commitment offense, including plea agreements." (Cal. Code Regs., tit. 15, § 3076.1, subd. (b)(3)(D).) At the time of the Secretary's 2019 recommendation, the requirements for the cumulative case summary were contained in former § 3076.2 and similarly focused on the inmate's commitment offense, criminal history, and gang affiliation, as well as "work and education assignments, and participation in self-help activities," but they did not include consideration of the inmate's visitor history. (*Id.,* former § 3076.2, subd. (b)(2)(A).) Former section 3076.2 also required preparation of an evaluation report for consideration by the Secretary, to include among other information "[t]he inmate's post-release plan." (*Id.*, former § 3076.2, subds. (b)(2)(C) & (e)).

23

inpatient substance abuse and mental health counseling program with vocational training upon his release.[16]  This type of information about an inmate's reentry plans would typically be in the possession of the defendant, not the Department.  The court also appears to have ignored (or minimized) the reference in the cumulative case summary to a February 6, 2019 letter from an unknown source "pledging full support of McCallum to ensure a successful parole by assisting with a residence, insurance, transportation, and work with and stay in contact with all release support programs."  Again, McCallum would have been in the best position to provide additional details on what support this unnamed source intended to provide upon McCallum's release.  The trial court's rejection of the Secretary's recommendation without an opportunity for McCallum to present this information was an abuse of discretion.[17]  (*People v. Miracle, supra*, 6 Cal.5th

---

[16]    McCallum asserts in his opening brief he was also prepared to submit information showing the multiple layers of review by the Department before the Secretary makes a recommendation to recall a sentence; the paucity of recommendations by the Secretary; McCallum's "support from dedicated community peer mentors"; and McCallum's educational and vocational programming records, commendations from prison staff and volunteers, employment history, psychiatric evaluations, and recidivism risk evaluations.

[17]    We note that under the Department's current regulations, where the Secretary elects to recommend an inmate for recall and resentencing, the Secretary must send the recommendation letter and cumulative case summary to the sentencing court, and further, "a copy shall be provided to the inmate and another copy placed in the inmate's central file within 10 business days of the decision."  (Cal. Code Regs., tit. 15, § 3076.1, subd. (e)(2).)

24

at pp. 346-347; *People v. Gibson, supra*, 2 Cal.App.5th at pp. 324-325; *Delson, supra*, 161 Cal.App.3d at p. 62.)

## DISPOSITION

The trial court's order declining to recall McCallum's sentence is reversed. The matter is remanded to the trial court to allow the parties to submit information relevant to the Secretary's recommendation and to provide briefing on whether the trial court should follow the Secretary's recommendation. Upon receipt of this information, the court is to exercise its discretion whether to recall and resentence McCallum.

FEUER, J.

We concur:

PERLUSS, P. J.

SEGAL, J.

---

Although the regulations in effect at the time of the Secretary's recommendation did not require the inmate be informed of the recommendation, as discussed, the Secretary sent a copy of its recommendation to the public defender's office and district attorney's office.