Filed 2/25/22  P. v. Woodson CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>QUINNTEZ WOODSON,<br><br>     Defendant and Appellant. | A162313<br><br>(City & County of San Francisco Super. Ct. Nos. SCN231371, CT19007515) |

Defendant Quinntez Woodson appeals the trial court's denial of his motion to strike a three-year firearm enhancement imposed under Penal Code section 12022.5, subdivision (a).[1]  He contends the trial court abused its discretion by failing to give adequate consideration to mitigating factors that justified striking the enhancement in the interest of justice.  We conclude the trial court's decision was squarely within the bounds of its discretion and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In June 2019, defendant was charged with attempted murder (§§ 664, 187, subd. (a); count one); assault with a semiautomatic firearm (§ 245, subd. (b); counts two, three, four, and five); possessing a firearm after a

---

[1]  Further section references are to the Penal Code.

1

misdemeanor conviction (§ 29805, subd. (a); count six); and unlawful possession of a loaded firearm (§ 25850, subd. (a); count seven). As to count one, the information alleged that defendant personally discharged a firearm. (§ 12022.53, subd. (c).) As to counts one through five, the information alleged that defendant personally used a semiautomatic firearm. (§ 12022.5, subd (a).)

The evidence at trial established as follows. One evening in March 2019, police officers responded to reports of gunfire at the Sunnydale Housing Projects in San Francisco. In a parking lot near the housing project, the officers found 24 Remington .223-caliber shell casings. It was later determined that all 24 bullets were fired from the same gun.

The Sunnydale Housing Projects was monitored by a video surveillance system. Two police sergeants reviewed the video footage of the incident and identified Tyree V. and Henry T. Another officer who reviewed the footage identified defendant wearing a blue sweatshirt and carrying a rifle. The video depicted an altercation and shootout near a residence on Santos Street. Henry T. was seen firing rounds in a nearby parking lot. After reviewing the video, officers went to that parking lot and found a .380-caliber shell casing.

Police officers executed a search warrant on the Santos Street residence and found shoes and clothing (including a blue sweatshirt) that matched what defendant was wearing in the video footage. They also found a pistol grip, a muzzle suppressor, and a rifle case consistent in length with an AR-15 rifle. A search of defendant's social media account revealed photographs of an AR-15 rifle and ammunition. Upon defendant's arrest in May 2019, the police found rifle rounds and bullets in a search of defendant's car.

The parties stipulated at trial that defendant was the individual in the blue sweatshirt depicted in the surveillance video; that the Santos Street

2

residence was the home of defendant's grandmother where he had been staying at the time of the incident; that a police officer had contacted defendant outside his grandmother's home in December 2018; and that defendant was prohibited from possessing firearms due to a prior misdemeanor conviction.

Defendant testified at trial that on the night of the shooting, he and his cousin K. were awaiting transportation to the BART station when a white car pulled up to them. Defendant recognized the driver as an acquaintance nicknamed Bo Spunkz. Spunkz exited the vehicle and began physically fighting with K. When another man approached defendant, he walked back to his grandmother's house, where his four siblings and grandmother were at the time. Defendant watched the fight from his bedroom window. K. returned to the house and explained that he and Spunkz were fighting because of rumors that K. had been "snitching." Defendant then heard a "loud bang" which he assumed was a gunshot, so he ran downstairs to check on his family. Defendant saw a bullet hole on the floor between the living room and kitchen, about a foot away from his little sister, who was crying.[2] Defendant assumed the shooter was Spunks, who had previously been incarcerated for a shooting.

Defendant testified he did not call the police for fear of being labeled a "snitch." Instead he decided to "scare them off" and "send a message in some way without killing them." Defendant owned an AR-15 style firearm because he and his grandmother lived in a rough neighborhood. Defendant, his stepfather, and K. approached the white car, and defendant crouched,

---

[2] An investigator from the San Francisco Public Defender's Office testified that he went to the Santos Street residence and found a depression in the living room consistent with a bullet strike.

pointed the rifle downward, and shot five or ten shots, intending to shoot at a "grassy area" where the bullets would not ricochet. Defendant later sold the gun because he knew he was prohibited from having it.

The jury found defendant guilty of counts five, six, and seven (assault with a semiautomatic weapon) and found true the personal firearm use allegation as to count five.[3]

In his sentencing memorandum, defendant asked the trial court to strike the firearm enhancement allegation in the interest of justice pursuant to section 1385. The probation department reported that defendant was ineligible for probation due to the jury's true finding as to the section 12022.5 allegation,[4] but recommended that the trial court strike the firearm enhancement and sentence defendant to five years of formal probation, with "execution of sentence suspended." As a proposed condition of probation, defendant would be required to waive custody credits for time served as well as potential rights to future custody credits.

The probation department's recommendation was based on various mitigating factors. As the probation report recounted, defendant had a difficult and traumatic childhood. Defendant's mother was incarcerated when he was eight years old, and he was left homeless until age 11. Defendant lived briefly with his father, who physically abused and neglected

---

[3] The jury acquitted defendant of count one and the lesser included offense of attempted voluntary manslaughter (§§ 664, 192, subd. (a)). The trial court declared a mistrial as to counts two, three, and four after the jury was unable to reach a verdict, and the court later granted the People's motion to dismiss these counts.

[4] Probation is unavailable for a person convicted of a "violent felony" or "serious felony" while on felony probation. (§ 1203, subd. (k).) Here, the true finding as to defendant's personal use of a firearm during a felony rendered the offense " 'violent' " (§ 667.5, subd. (c)(8)) and " 'serious' " (§ 1192.7, subd. (c)(23)) within the meaning of section 1203, subdivision (k).

him, before defendant ran away. Defendant eventually lived with his mother again at his aunt's apartment, where he did the grocery shopping for his family, looked after his little brother, and resorted to selling drugs to pay the family's rent. Defendant was eventually homeless again before he became a ward of the state in the foster care system until age 17. The probation report noted that defendant was a youthful offender (age 23 at the time of sentencing), and that he had accepted responsibility for his actions, expressed remorse, and was motivated to move forward in a positive direction. Despite his difficult background, defendant graduated from high school at age 17, earned a college scholarship and completed three semesters, and was employed at the time of his arrest.

The trial court declined to strike the firearm enhancement, noting that defendant had two recent prior convictions involving the unlawful possession of firearms—a January 2018 conviction for carrying a concealed weapon (§ 25400, subd. (a)(2)) and an October 2018 conviction for carrying a loaded firearm in a public place (§ 25850, subd. (a))—and "was on probation when he committed this crime." Although the prior convictions were misdemeanors, the court noted they were "recent in relation to this offense," and the crimes were "of increasing seriousness." In the court's words, "[t]he persistence of firearms offenses by [defendant], notwithstanding his prior recent convictions and notwithstanding his prior custody time for a firearms offense, persuades me that he is not outside the spirit of this statutory enhancement."

The trial court acknowledged defendant's "youth and his prospects for rehabilitation" as well as his lack of "a significant record of prior criminal offenses," and the court took "very seriously that he comes from a very difficult background and, notwithstanding that, has accomplished quite a lot for someone who comes from that background." The court also recognized

5

defendant's strong and positive relationships in his life, and his successes in school and employment. The court further noted that [Henry T.] was a violent person, and that defendant and his family "came into conflict or danger from [Henry T.] for his associates." However, the court found that in balancing these factors, "the seriousness of this gun use," including "the number of shots he fired and where he fired them, in the parking lot of a busy apartment community where people and families live," striking the firearm enhancement was "not [a] sound use of [the court's] discretion."

The trial court sentenced defendant to six years in prison, consisting of the low term of three years on count five, plus three years for the personal firearm use enhancement. The court sentenced defendant to the mid term of two concurrent years for each of counts six and seven, and stayed punishment for count seven.

Defendant appealed.

## DISCUSSION

Under section 12022.5, subdivision (a), "any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense."[5] "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section." (§ 12022.5, subd. (c).)

" ' "[A] court's discretionary decision to dismiss or to strike a sentencing allegation under section 1385 is" reviewable for abuse of discretion.'

---

[5] "Notwithstanding the limitation in subdivision (a)," the enhancement applies where, as here, the defendant violates section 245 using a firearm. (§ 12022.5, subd. (d).)

[Citation.] 'In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, " '[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " [Citation.] Second, a " 'decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." ' " [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.' " (*People v. Pearson* (2019) 38 Cal.App.5th 112, 116 (*Pearson*).)

"In addition to the factors expressly listed for determining whether to strike enhancements listed in California Rules of Court, rule 4.428(b), the trial court is also to consider the factors listed in California Rules of Court, rule 4.410 (listing general objectives in sentencing), as well as circumstances in aggravation and mitigation under California Rules of Court, rules 4.421 and 4.423. '[U]nless the record affirmatively reflects otherwise,' the trial court is deemed to have considered the factors enumerated in the California Rules of Court. [Citation.] Among other factors the court may have considered were that '[t]he crime involved great violence . . . threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness,' that the 'defendant was armed with or used a weapon at the time of the commission of the crime,' and that the 'victim was particularly vulnerable.' " (*Pearson, supra*, 38 Cal.App.5th at p. 117.)

"[A]n abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss." (*People v. Carmony* (2004) 33 Cal.4th 367, 378.) "Where the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.'" (*Ibid.*)

Here, defendant fails to show the trial court abused its discretion in declining to strike the firearm enhancement: nothing in the record affirmatively establishes that the court considered impermissible factors or overlooked required ones, or that it departed from applicable legal principles, or that it failed to reach an impartial decision in conformity with the spirit of the law. There was no irrationality or arbitrariness in the court's consideration of the threat of violence posed by defendant's act of firing numerous gunshots in a residential area. (See Cal. Rules of Court, rule 4.421(a)(1) [circumstances in aggravation relating to crime include threat of great bodily harm]; *Pearson*, *supra*, 38 Cal.App.5th at p. 117 [violent conduct that indicates serious danger to society can be considered on motion to strike enhancement].) Likewise, the court's consideration of defendant's prior—and very recent—misdemeanor convictions was permissible and reasonable. (See Cal. Rules of Court, rule 4.421(b)(2), (4), (5) [factors relating to defendant include prior convictions as adult, probation status when crime was committed, and prior unsatisfactory performance on probation].)

Defendant suggests the trial court placed undue emphasis on his two prior offenses because they were both misdemeanors, and because defendant had explained that he carried guns because he lived in a rough neighborhood.

8

The court, however, was not bound by this showing and could reasonably harbor the concern that defendants' firearm offenses were not only continuing but escalating. (See *People v. Black* (2007) 41 Cal.4th 799, 818–819 [court can consider whether convictions are of increasing seriousness].)

We are not unsympathetic to defendant in light of the difficulties he has endured throughout his life. The trial court, too, noted its consideration of defendant's youth and accomplishments despite a very difficult childhood, but nevertheless found that the balance of factors weighed against striking the firearm enhancement. While reasonable people might disagree with the court's decision, the ruling was squarely within the bounds of the court's sentencing discretion. (*Pearson, supra*, 38 Cal.App.5th at p. 116.)

Defendant's reliance on the probation department's recommendations does not alter our conclusion that no abuse of discretion appears. The probation department's report "is advisory only, provided in order to aid the sentencing court in determining an appropriate disposition, and may be rejected in its entirety." (*People v. Delson* (1984) 161 Cal.App.3d 56, 63.) The trial court here read and considered the probation report and referred to it during sentencing. Having done so, the court properly exercised its discretion.

## DISPOSITION

The judgment is affirmed.

FUJISAKI, Acting P.J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

*People v. Woodson* (A162313)

9