Filed 7/26/21  P. v. Escareno CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B302856, B307141 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. |
| v. | KA055189, VA068367) |
| ROBERT ANTHONY ESCARENO, | |
| Defendant and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County, Salvatore T. Sirna and Raul Anthony Sahagun, Judges. Affirmed in part, reversed in part, and remanded with directions.

Three Strikes Project, Milena N. Blake, Michael S. Romano and Susan L. Champion for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Robert Anthony Escareno was sentenced in 2002 to prison terms totaling 175 years to life under the Three Strikes law. In 2019, the secretary of the California Department of Corrections and Rehabilitation (CDCR) recommended that the sentences be recalled and appellant be resentenced. (Pen. Code, § 1170, subd. (d)(1).)[1] Trial courts in Pomona and Norwalk found that appellant is a threat to society and declined to recall his sentences.[2] We have consolidated the cases for review.

The Pomona court acknowledged the absence of "tangible documentation or history that would aid the court in determining whether to exercise its discretion." However, it did not give appellant an opportunity to submit evidence supporting his recall request. The court abused its discretion in the Pomona case, which we reverse and remand for further proceedings.

The Norwalk court refused to recall appellant's sentence after reading his supporting evidence and hearing testimony. There was no abuse of discretion. The court could rationally find that the threat appellant poses to society outweighs his good behavior in prison. Prior imprisonment did not deter him from committing armed robberies and carjacking. We affirm the Norwalk ruling.

## FACTS AND PROCEDURAL HISTORY
### Appellant's Conviction in the Pomona Case

On May 20, 2002, a jury convicted appellant of three counts of second degree robbery using a firearm. (§§ 211, 12022.53,

---

[1] Undesignated statutory references are to the Penal Code.

[2] The Pomona case is Superior Court of Los Angeles County No. KA055189. The Norwalk case is Superior Court of Los Angeles County No. VA068367.

subd. (b).)  The court found that appellant has 13 prior robbery convictions and a conviction for assault with a firearm.  (§§ 211, 245, subd. (a)(2).)  It sentenced him to prison for 110 years to life under the Three Strikes law.

This court affirmed the conviction in *People v. Escareno* (Nov. 12, 2003, B159831) [nonpub. opn.].  The opinion states that on September 20, 2001, appellant pointed a gun at a Sizzler cashier and demanded all the money in the register, which she gave him because she feared for her life.  Three weeks later, he robbed two Chevron station cashiers at gunpoint.  Victims identified appellant in a photo lineup, at the preliminary hearing, and at trial; they were certain of their identifications because they had a good look at appellant, who was unmasked and only a few feet from them.  (*Ibid.*)

In April 2019, appellant filed a motion in propria persona to compel discovery, claiming he does not fit the description of the person who robbed the Sizzler.  The court denied his motion.

**Appellant's Conviction in the Norwalk Case**

On October 15, 2002, a jury convicted appellant of second degree robbery, carjacking, and possession of a firearm by a felon. (§§ 211, 215, subd. (a), 12021, subd. (a)(1).)  He used a firearm to commit the carjacking and robbery.  (§ 12022.53, subd. (b).)  The court found that appellant has 15 prior convictions for robbery and one for assault with a firearm.  (§§ 211, 245, subd. (a)(2).)  It sentenced him under the Three Strikes law to 65 years to life in prison, to be served consecutively with his sentence in the Pomona case.

This court affirmed the conviction in *People v. Escareno* (Feb. 5, 2004, B163405) [nonpub. opn.].  The opinion states that on October 12, 2001, appellant took a taxi from his home to a

Shakey's pizza parlor, which he held up at gunpoint. Afterward, he returned to the taxi. The driver was apprehensive because he saw "spooked" people leaving the restaurant; he feared for his life when his dispatcher broadcast that a robbery had just occurred there. The same day, appellant was accused of holding a gun on a car salesman during a test drive, taking valuables and the car. Appellant's fingerprints were in the car when it was recovered three days later. On December 3, 2001, appellant pointed a handgun at a car salesman during a test drive, threatened to kill him when he hesitated, and stole the car.[3] (*Ibid.*)

The cab driver and Shakey's employees identified appellant in photo lineups, at the preliminary hearing, and at trial. The employees had a long look at appellant and told police the name "Escareno" is tattooed on the left side of his neck. The robbery was caught on a security camera. The car salesmen identified appellant in a photo lineup; they were certain he was the carjacker. When police tried to arrest appellant, he ran away and threatened to shoot them. (*People v. Escareno, supra*, B163405.)

### The CDCR Recommendation

On May 31, 2019, after appellant served 17 years, CDCR recommended that the sentences be recalled and that he be resentenced. The CDCR evaluation recites appellant's criminal history. The People elaborated on his history in the Norwalk case.

Born in 1974, appellant was arrested at age eight for arson causing great bodily injury; the final disposition is unknown. He has sustained petitions for burglary (1987); vandalism causing

---

[3] The jury did not reach a verdict on the October carjacking and a mistrial was declared on that count.

4

$1,000 to $5,000 in damage (1989); and was an accessory to attempted murder and assault with a firearm (1990).

In 1991, appellant was convicted of 11 counts of robbery and assault with a firearm and sentenced to 15 years in prison but was housed at the Youth Authority. Also in 1991, a sustained petition found he committed robbery, battery on a peace officer, and obstructed an officer, with a firearm enhancement. In 1993, he was arrested for robbery and false imprisonment.

Appellant began his adult incarceration in August 1993. He was paroled in March 2001 and absconded from parole in August 2001.[4] He returned to parole in December 2001. He was imprisoned as a parole violator in November 2002. While charges were pending in the Pomona and Norwalk cases, appellant was charged with a jail escape, which was later dismissed in the interest of justice.

CDCR detailed appellant's disciplinary history in prison. He had a "serious" rule violation in 2006 for mutual combat; two 2006 administrative violations for staff manipulation; and a 2005 violation for destruction of state property. He "was identified as a Security Threat" because of gang membership; however, he renounced his gang affiliation in 2015. Since 2006, he "has remained disciplinary free" and "demonstrated the desire and ability to fulfill job assignments."

Appellant is housed at a CDCR substance abuse treatment facility and works as a library assistant. In prison, he worked as a porter (2014), a clerk (2012), and in vocational office services

---

[4] After absconding from parole, appellant committed the armed robberies and carjacking involved in the Pomona and Norwalk cases between September and December 2001.

(2009).  He has completed educational courses, substance abuse programs, and is a speaker in Toastmaster's.  Family and friends visit him in prison.

## The Trial Court Proceedings

Represented by counsel, appellant submitted the CDCR recommendation to the trial court, asserting that he "is one of fewer than 75 people to receive such a recommendation out of a prison population of over 120,000."  He argued that CDCR's evaluation of his adult criminal and juvenile record, prison disciplinary history, and probation report lead to the conclusion that his "exceptional" behavior shows he has changed and "would be a positive asset to the community" if released.

Appellant's counsel filed a request for a case management conference in both cases.  The Pomona court did not have appellant supplement the material cited by CDCR.  It decided the request based on its review of the CDCR evaluation and appellant's criminal history.

Appellant submitted a brief and evidence in the Norwalk case.  He argued that his "overwhelming record of rehabilitation, risk assessments and comprehensive reentry plan" support resentencing.  He emphasized his lack of disciplinary violations for the past 10 years, his negative drug tests, his classification as low security risk and the "low risk" he will reoffend if released from custody.  He plans to reenter society with help from a supportive organization.

Former federal probation officer Richard Wood filed a report and testified in the Norwalk case.  He opined that appellant is suitable for release, with a rehabilitative post-release plan.  Wood's opinion was based on the absence of prison rule violations for 14 years and appellant's understanding that his

6

behavior negatively impacted his victims, his family, and his own life. Despite appellant's serious criminal history, Wood did not believe he poses a risk to society.

Wood testified that appellant was abandoned by his parents, raised by his grandmother, was addicted to cocaine by age 13, and "was an angry, alienated young man who started committing a great number of antisocial acts for which he is now ashamed." He has been institutionalized most of his life, in the juvenile delinquency system or prison. He was introduced to drugs by gang members and did not receive treatment until his current prison stint. Obtaining money to buy drugs motivated his crimes. He has not tested positive for drugs in prison.

Appellant went to a segregated unit after engaging in a prison fight in 2006. He had a revelation that he had to change his life and began to participate in sobriety and education programs. He has no record of gang involvement in prison and is classified as a low security risk. Prison staff commend his work ethic, dedication and courtesy. Wood acknowledged that appellant "needs to be in [drug] treatment should he be released." The People opposed recall and resentencing.

### The Trial Court Rulings
### The Pomona Ruling

On October 30, 2019, the Pomona court declined to exercise its discretion to recall appellant's sentence, observing that he is a third strike offender convicted of three counts of armed robbery. The court listed reasons for its decision.

First, appellant's "criminal history is extensive." Starting in 1987, he had four sustained juvenile petitions and at least 13 serious, violent felony convictions. The crimes increased in severity and violence, and most involved a firearm.

7

Second, while on parole for a 15-year prison sentence, appellant "failed to conform his conduct to societal norms and was undeterred from committing future, violent crimes." These included multiple armed robberies and a carjacking, which "demonstrate that Mr. Escareno is both a real and a violent threat to the community."

Third, the recall request "fails to provide the court with any tangible documentation or history" showing why appellant qualifies for relief. Self-help classes may benefit appellant but "the court is not inclined to exercise its discretion to recall [Mr. Escareno's] sentence based on the self-help study identified."

### The Norwalk Ruling

The Norwalk court acknowledged that appellant is one of the few inmates to receive a CDCR recommendation. However, it emphasized that after nine years of incarceration, appellant promptly violated parole and committed multiple serious felonies at gunpoint. It was fortuitous that no one was killed. With 12 prior strikes, appellant "is a poster child" for the Three Strikes law. The court was not persuaded that appellant is no longer a danger to society. Though he is doing well in prison, there is no indication he can survive outside an institution without committing very serious crimes. The court denied the request to recall appellant's sentence on June 26, 2020.

### DISCUSSION

### General Considerations

The trial court "may" recall a sentence "at any time upon the recommendation" of CDCR and "resentence the defendant in the same manner as if they had not previously been sentenced;" it may reduce the term of imprisonment "if it is in the interest of justice." (§ 1170, subd. (d)(1).) In a two-step process, the court

first decides whether to recall the sentence; if it recalls the sentence, it then holds a sentencing hearing.[5]

The denial of a CDCR recommendation to recall a sentence is appealable. (*McCallum*, *supra*, 55 Cal.App.5th at p. 210; § 1237, subd. (b) [appeal lies from "any order after judgment, affecting the substantial rights of the party"].) We review the order for an abuse of discretion; the ruling will not be disturbed unless it was exercised in an arbitrary, capricious, or patently absurd manner resulting in a manifest miscarriage of justice. (*McCallum,* at p. 211.) Questions of statutory construction are reviewed de novo. (*Ibid.*; *People v. Frazier* (2020) 55 Cal.App.5th 858, 864, 867 [there is no constitutional right to counsel when CDCR submits a request to recall a sentence].)

Though CDCR may recommend recall of a sentence at any time, section 1170, subdivision (d)(1) "apparently does *not* require the court to respond to the recommendation." (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 459.) It "allows the sentencing court to recall and resentence at any time upon recommendation of [CDCR], but . . . it does not require the court to 'consider' any

_____

[5] At resentencing, "[t]he court may consider postconviction factors, including, but not limited to, the inmate's disciplinary record and record of rehabilitation while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the inmate's risk for future violence, and evidence that reflects that circumstances have changed since the inmate's original sentencing so that the inmate's continued incarceration is no longer in the interest of justice." (§ 1170, subd. (d)(1); *People v. McCallum* (2020) 55 Cal.App.5th 202, 214 (*McCallum*) [the "postconviction factors" guide resentencing, not the initial decision whether to recall].)

9

such recommendation." (*Dix,* at p. 459, fn. 13; *People v. Delson* (1984) 161 Cal.App.3d 56, 62 [recall "is permissive, not mandatory"].) A CDCR recommendation does not trigger "any right to the recommended relief." (*People v. Frazier, supra,* 55 Cal.App.5th at p. 866.)

## No Abuse of Discretion in the Norwalk Case

Appellant contends that the Norwalk court limited its decision to circumstances at the time of his conviction and failed to consider postconviction factors. The record belies his claim. At the outset, the court said, "The court has read all of the papers," meaning it looked at the CDCR recommendation and appellant's evidence. After hearing testimony and argument, it recited appellant's criminal record and said, "I have to weigh that against the material [that] indicates that he is not a danger." It declined to recall the sentence "notwithstanding the opinion" of appellant's expert, Mr. Wood.

The court thus considered appellant's postconviction behavior, as described in documents and by Mr. Wood. It concluded that appellant's history of recidivism outweighed his good behavior in prison since 2006 and declined to exercise its discretion to recall appellant's sentence. The court decided that, on balance, it was "not persuaded that [appellant] is no longer a threat to the public."

Appellant did not carry his burden of persuading the court to recall the sentence. The court has sole authority over decisions to recall a sentence. The CDCR recommendation appellant relies upon is not binding on the court.

Appellant began his life of crime at age eight; although the disposition is unknown for a charge of arson causing great bodily injury, it is a community safety factor to consider. He had

sustained juvenile petitions for burglary, vandalism, assault with a deadly weapon, 12 robberies, battery on a peace officer, and was an accessory to attempted murder. Released on parole, he resumed his criminal career and committed four armed robberies and a carjacking, all violent felonies. (§ 667.5, subd. (c)(9), (17).) He escaped from jail while charges were pending.

Appellant repeatedly reoffended, and neither the Youth Authority nor prison was a deterrent to recidivism. He was 27 years old when he committed the crimes at issue here. He points to his postconviction participation in schooling, mentoring and 12-step programs, and absence of rule violations since 2006 as reasons to recall his sentence. This is not enough, if a defendant's crimes are serious and violent. For example, a defendant who commits murder as a juvenile may not qualify for recall of his sentence of life without the possibility of parole despite being remorseful; having no disciplinary record in prison for five years; receiving letters of commendation from prison officials; and participating in 12-step programs and the prison ministry. (*People v. Willover* (2016) 248 Cal.App.4th 302, 311–312, 316–317, 323–324 [applying § 1170, subd. (d)(2), the juvenile recall and resentencing provision].)

Viewed in the context of his unremitting, life threatening criminality, appellant's rehabilitative efforts, though commendable, did not convince the court that his sentence should be recalled. The court weighed all the material before it and reached a reasoned decision under the proper criteria. Its decision was made with awareness of its discretionary authority and the reasons for and against recall of the sentence. Though the court disagreed with CDCR, this only illustrates it was a

11

discretionary judgment.  We cannot say the decision was unreasonable, arbitrary, or a miscarriage of justice.

### Abuse of Discretion in the Pomona Case

Appellant contends that the Pomona court "did not have sufficient information to exercise informed discretion" when it declined to recall his sentence without a hearing.  He argues that he was entitled to notice and an opportunity to present additional postconviction evidence.  The Attorney General agrees with appellant.

Language in section 1170 "shows the Legislature did not intend to require a trial court to hold a hearing before acting on a recommendation by [CDCR] for recall and resentencing." (*McCallum, supra,* 55 Cal.App.5th at p. 206; *People v. Delson, supra,* 161 Cal.App.3d at pp. 60–61 [court may consider a recall request ex parte].)  Though not required to hold a hearing, "the trial court was required to consider evidence [from defendant] in support of the [CDCR] recommendation" before ruling. (*McCallum,* at p. 217, citing *People v. Loper* (2015) 60 Cal.4th 1155, 1167, and *People v. Carmony* (2004) 33 Cal.4th 367, 375.)

Appellant's counsel attached the CDCR letter to his motion and requested a case management conference "to discuss CDCR's recommendation and, if necessary set a briefing and hearing schedule for this matter."  The *McCallum* court interpreted this language to be a request to submit additional information supporting the CDCR recommendation. (*McCallum, supra,* 55 Cal.App.5th at pp. 209, 216, fn. 13.)

In *McCallum*, the defendant had a Three Strikes sentence for burglary.  After receiving a CDCR recommendation, the trial court considered McCallum's criminal history involving drug use, two robberies, petty theft with priors, battery and grand theft; he

12

had five parole violations.  In prison, McCallum took classes, participated in a substance abuse program and had no rule violations in his 12 years in prison.  The trial court largely based its refusal to recall the sentence "on a finding that McCallum had no family or community support" as shown by the absence of visitors.  (*McCallum, supra,* 55 Cal.App.5th at pp. 207–209.)

Division Seven of this district concluded that McCallum should have been allowed to provide information about family and community support because McCallum, not CDCR, had access to this material.  McCallum would have submitted documentation showing that he was accepted into a substance abuse and mental health inpatient counseling program upon his release.  (*McCallum, supra,* 55 Cal.App.5th at pp. 206–207.)

Here, the Pomona court wrote that the CDCR request for resentencing "fails to provide the court with any tangible documentation or history that would aid the court in determining whether to exercise its discretion" and "family and community support for Mr. Escareno was not addressed by the CDCR in its recommendation, with no identifiable base of support."

In short, the Pomona court acknowledged that it needed more information before it could exercise discretion.  Appellant could have supplied the documents the court lacked.  "The trial court's rejection of [CDCR's] recommendation without an opportunity for [appellant] to present this information was an abuse of discretion."  (*McCallum, supra,* 55 Cal.App.5th at pp. 218–219.)

## DISPOSITION

The order denying the recall of appellant's sentence in *People v. Escareno,* Superior Court of Los Angeles County No. VA068367 is affirmed.

The order denying the recall of appellant's sentence in *People v. Escareno,* Superior Court of Los Angeles County No. KA055189 is reversed. The matter is remanded to the trial court with directions to allow the parties to submit information relevant to the California Department of Corrections and Rehabilitation's recommendation and to provide briefing on whether the court should follow the recommendation. Upon receipt of this information, the court is to exercise its discretion whether to recall Escareno's sentence.

**NOT TO BE PUBLISHED.**


LUI, P. J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.

14