Filed 5/30/24  P. v. Wertz CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JEREMIAH WERTZ,<br><br>     Defendant and Appellant. | A167930<br>(Lake County Super. Ct.<br>No. CR963953) |

Defendant Jeremiah Wertz appeals from the sentence imposed after he pleaded no contest to two counts of inflicting corporal injury on a person with whom he had a dating relationship.  He contends the trial court erred in imposing an upper term and in assessing restitution fines without a showing of present ability to pay.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Plea*

In March 2023, defendant entered a plea of no contest to two counts of willfully inflicting corporal injury upon a person with whom he had a dating relationship (Pen. Code,[1] § 273.5, subd. (a)) in exchange for the dismissal of other charges (assault by means of force likely to produce great bodily injury and battery resulting in serious bodily injury) and various special allegations

---

[1] Further undesignated statutory references are to the Penal Code.

1

and with the understanding that he could be sentenced to up to five years in prison.

Defendant's attorney stipulated to the following factual basis for the plea.

"On June 12th in the year 2022 at approximately 04:00 hours, the alleged victim N.C. and Mr. Wertz were at her residence. At approximately 4:00 hours, for unknown reasons, he spontaneously called her a, quote, 'f****** n*****,' unquote, and struck her multiple times in the face with a closed fist, struck her in the right arm, leaving bruising. He grabbed her right ring finger and twisted. The alleged victim . . . felt as if he had broken her finger. The officer who responded . . . observed that she had multiple bruises on her right arm and a bruise on the back of her left hand the size of a golf ball. She also reported a loss of hearing. . . . The alleged victim N.C. and Mr. Wertz had been in a dating relationship for approximately five months . . . .

"On or about April 11th in the year 2022 at approximately 2200 hours, Mr. Wertz and the same victim N.C. were at her residence . . . . He began arguing with her for unknown reason reasons and spontaneously called her a, quote, 'n***** lover,' unquote, along with several other foul names. He grabbed and twisted her knee with an unknown hand. Afterwards she went to sleep. And on the following day, he was at the residence and she was on the phone with a friend. He was upset. He slapped her in the face with his right hand, climbed on top off her and pinned her to the bed and pulled her hair while striking her in the face approximately 10 times. The officer observed bruising on her face, bruising to her right eye, both of her cheeks, and sides of her neck consistent with someone striking her in a manner described to the officer."

*Sentencing*

The probation report noted a risk assessment indicated defendant had a high risk of reoffending, he had a recent record of committing similar crimes, his prior crimes were numerous, his prior performance on summary probation and mandatory community supervision was poor, his ability to comply with reasonable conditions of probation was poor, he had served two prior state prison terms and two prior county jail terms under section 1170, subdivision (h), and he was presumptively ineligible for probation except in an unusual case because he had suffered five prior felony convictions. (See § 1203, subd. (e)(4) [probation shall not be granted to any person previously convicted twice of a felony, except in unusual cases].) Acknowledging these circumstances and further finding "this is not an unusual case," the probation department nonetheless recommended probation, which would include a residential substance abuse treatment program.

At sentencing, despite the stipulation to the factual basis for the plea, defendant appeared to deny that he did anything wrong; defendant told the court that when he was dating the victim, he realized right away that he "made a mistake" because she drank up to 30 containers of beer a day and became belligerent, that he did not know how the victim got bruised up and thought perhaps she got in a fight with someone while she was drunk, and that the victim had "abandonment issues" or "multiple personality disorder or something."

The prosecutor asked for a prison sentence of the middle term and a consecutive one-third term (for four years), noting that defendant had multiple prior convictions, including weapons charges and misdemeanor batteries, and that he had taken no responsibility for his actions in the current case.

3

The trial court denied defendant probation, observing this was not an unusual case.

The court found aggravating and mitigating factors as follows: "The defendant has engaged in violent conduct which indicates a serious danger to society. His prior convictions are numerous and increasing in seriousness. And for the record, I have certified court records to those priors because they're local priors. He has served two prior prison terms in state prison and two county jail prison terms. His prior performance on summary probation and mandatory community supervision has been unsatisfactory. I don't find any factors in mitigation."

The court found "the aggravating factors outweigh those in mitigation, and I have certified records on which I can . . . make that finding," and imposed the upper term of four years for the principal term, plus a consecutive one-third the middle term of one year for a sentence of five years in state prison.

## DISCUSSION

A.    *Imposition of the Upper Term*

Initially, defendant "questions" the trial court's rejection of the probation department's recommendation that he be placed on probation, but there is no doubt the trial court was free to reject that recommendation. (*People v. Delson* (1984) 161 Cal.App.3d 56, 63.) To the extent defendant challenges the denial of probation, we easily conclude the trial court acted within its discretion in finding this case is not unusual so as to rebut section 1203's presumption of ineligibility for probation. (See *People v. Stuart* (2007) 156 Cal.App.4th 165, 178–179 [a trial court's discretion in determining whether to grant probation is broad; the standard for reviewing a finding that a case is unusual is abuse of discretion].)

4

Defendant contends the trial court abused its discretion in imposing the upper term. He argues the court failed to take account of evidence submitted in a letter from his wife that he suffered from childhood trauma. We find no abuse of discretion.

Section 1170, subdivision (b)(6) (§ 1170(b)(6)) provides, "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma . . . ."

Defendant has forfeited this claim because, at sentencing, he neither asked for the lower term based on section 1170(b)(6) nor claimed that he suffered childhood trauma that contributed to the commission of the current offenses. (See *People v. Tilley* (2023) 92 Cal.App.5th 772, 778 [claim that the trial court abused its discretion in not applying section 1170(b)(6) forfeited where the defendant did not seek the lower term based on the statute or argue he suffered trauma].)

In any event, the record discloses no error in the trial court's implicit determination that section 1170(b)(6) did not apply in this case. (See *People v. Achane* (2023) 92 Cal.App.5th 1037, 1044 [a trial court's decision whether to apply the lower term under section 1170(b)(6) "depends on both factual determinations and the exercise of discretion"].) The probation department reported that defendant denied any abuse or neglect in his childhood home. Thus, the trial court reasonably could have determined as a factual matter that defendant did not suffer childhood trauma. The court also could have found that section 1170(b)(6) did not apply because there was no evidence

5

that any childhood trauma contributed to his commission of the current offenses. Given that defendant denied both that he committed the current offenses and that he suffered abuse or neglect as a child, the trial court can hardly be faulted for failing to find that childhood trauma contributed to the commission of the current offenses.

The trial court properly found as an aggravating factor that defendant's prior convictions were numerous; therefore, it could legally impose an upper term. (Cal. Rules of Court, rule 4.421(b)(2); § 1170, subd. (b)(3).) Defendant argues his prior crimes (including convictions for a domestic violence incident, possession of a fixed blade knife, and unlawful possession of ammunition) should not be held against him because they were likely related to his substance abuse problem. But the trial court reasonably decided otherwise. Defendant has not shown abuse of discretion.

B.    *Restitution*

At sentencing in 2023, the trial court imposed the minimum restitution fine of $300 under section 1202.4, subdivision (b). Defendant did not object that he was unable to pay under *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1164.

On appeal, defendant claims the restitution fine should not have been assessed without the prosecution establishing a present ability to pay, citing *Dueñas*. This claim is forfeited. (See *People v. Trujillo* (2015) 60 Cal.4th 850, 856, 859 [constitutional claim regarding ability to pay fees is subject to the forfeiture rule].)

Defendant next argues defense counsel's failure to raise the issue of ability to pay at sentencing deprived him of effective assistance of counsel. "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical

6

purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.  All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)  The record is silent as to why defense counsel chose not to object to the imposition of fines and fees.  It is possible defense counsel did not object because she knew defendant *did* have the ability to pay.  We cannot say defendant received ineffective assistance of counsel on direct appeal.

## DISPOSITION

The judgment is affirmed.

7

_____

Miller, J.

WE CONCUR:


_____

Richman, Acting P. J.


_____

Desautels, J.


A167930, *People v. Wertz*