Filed 8/18/21  P. v. Villeda CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALLAN VILLEDA,<br><br>    Defendant and Appellant. | B302413<br><br>Los Angeles County<br>Super. Ct. No. TA111443-01 |

APPEAL from an order of the Superior Court of Los Angeles County, Tammy Chung Ryu, Judge.  Affirmed.

Tanya Dellaca, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Allan Villeda of four counts of robbery committed against four victims in 2009 and 2010. The jury found Villeda personally used a firearm in the robberies and committed the crimes for his gang. The trial court sentenced Villeda to 38 years in the state prison. In February 2019 the Secretary of the California Department of Corrections and Rehabilitation sent the trial court a letter recommending it recall Villeda's sentence and resentence him, noting the court now has the discretion to strike firearm enhancements. The trial court declined the invitation. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1. *Villeda's crimes, convictions, and sentence*

Villeda robbed four victims over a span of about five months in late 2009 and early 2010.[1] In summary, these victims were:

- *Ignacia Melendez.* Melendez was going to pick up her son from school. She went to her car parked in front of her home. Villeda pulled up in a red Ford Explorer and called to her. Melendez approached the SUV. Villeda demanded Melendez give him two gold necklaces she was wearing. Melendez saw Villeda had a gun in his lap, pointed at her. She refused and walked toward her home. Villeda got out and followed her, holding the gun.

---

[1] We take the facts from our opinion in Villeda's direct appeal (*People v. Villeda* (Sept. 27, 2012, B230494) [nonpub. opn.] (*Villeda I*)), of which we take judicial notice. (Evid. Code, §§ 452, subd. (d), 459.) Villeda also relies on, and quotes from, our opinion in his statement of facts on appeal. The Attorney General asks us to take judicial notice of our "file from appellant's prior appeal" as well.

2

He threatened to shoot her if she didn't stop.  Villeda pulled the chains from Melendez's neck and drove away.

- *Ever Pineda.*  Pineda was washing a truck, accompanied by his wife and two children.  As Pineda was bending down to clean the tires, Villeda approached and yanked a gold chain from his neck.  Pineda turned to find Villeda pointing a gun at him.  Villeda demanded money and Pineda gave him about $85.  Villeda removed Pineda's wallet from his pocket and looked at his driver's license, saying, " 'Just in case you talk to the police.' "

- *Oscar Hernandez and Julio Nunez.*  Hernandez and Nunez were rebuilding a wall.  As they began to clean up, a red SUV pulled up and Villeda's fellow gang member Luis Alonso Escatel got out and approached Nunez.  Villeda also got out of the SUV, approached Hernandez, grabbed his neck in a headlock, and told him, " 'Walk.' "  Hernandez felt a hard object pushed against his back.  Villeda or Escatel, or both of them, took cash and a cell phone from Hernandez's pockets, and Villeda tore a gold chain from his neck.  Villeda also went through Nunez's pockets and took his cell phone. (*Villeda I*.)

Both Villeda and Escatel were members of the Alondra 13 gang.  Both had gang tattoos.  Villeda's monikers were "Evil," "Demon," and "Chuckie."  Villeda was the senior member of the gang and was active in recruiting members.  (*Villeda I*.)

The jury convicted Villeda of the second degree robberies of Melendez, Pineda, Hernandez, and Nunez.  The jury found true allegations that Villeda personally used a firearm in the commission of each robbery and that he committed the crimes for the benefit of, at the direction of, or in association with a criminal

street gang.  The trial court sentenced Villeda to 38 years in the state prison.  The court chose the upper term of five years on the Melendez robbery plus ten years for the gun use plus ten years for the gang enhancement.  On each of the remaining three counts, the court imposed one-third the midterm of one year plus three years and four months for the gun.  The court imposed but stayed concurrent terms of ten years each for the gang enhancement on those counts.  We affirmed Villeda's conviction. (*Villeda I*.)

**2.** ***The Department of Corrections and Rehabilitation's letter of recommendation and the trial court's ruling***

On February 25, 2019, the Los Angeles Superior Court received a letter dated February 11, 2019 from the Office of the Secretary of the Department of Corrections and Rehabilitation (the Secretary).[2]  The Secretary recommended "a recall of sentence and resentence" of Villeda under Penal Code section 1170, subdivision (d)(1) (section 1170(d)(1)).[3]  The Secretary stated, "[P]lease consider the amendment to [Penal Code] Section 12022.53, subdivision (h), which became effective January 1, 2018."  As the Secretary noted, that amendment gave courts discretion to strike or dismiss a personal use firearm enhancement at sentencing (or resentencing) in the interest of justice.

The Secretary enclosed a Cumulative Case Summary and Evaluation Report, "present[ing] case factors that are applicable"

---

[2]     At the time, the Secretary was Ralph M. Diaz. (<https://www.cdcr.ca.gov/insidecdcr/2020/08/28/governor-newsom-announces-cdcr-secretary-retirement-names-new-secretary/> [as of Aug. 18, 2021], archived at <https://perma.cc/9ZLX-DN5J>.)

[3]     References to statutes are to the Penal Code.

4

to the recommendation.  The report noted Villeda has "an active Immigration and Customs Enforcement (ICE) detainer . . . for Illegal Entry."  Under "Institutional Adjustment" the Secretary stated, "Villeda is identified as an active member of the Varrio Alondra 13 Sureno disruptive Security Threat Group." He received a "serious Rules Violation Report" in 2012 "for Possession of a Weapon and was subsequently found guilty of the charges."  Villeda had "no pending disciplinary actions" and had "not received any Custodial Counseling Chronos."  He is housed in the general population at Ironwood State Prison. He works as a kitchen cook.  His work performance was satisfactory for a three-month period in 2016.  In 2012 and 2013 he participated in group hunger strikes at another prison. In 2018 he received a report noting satisfactory progress "while assigned to Adult Basic Education III."

Under "Self-Help Activities," the Secretary noted Villeda completed his GED in December 2018 and received certificates for completing two programs, the "Kairos Inside Weekend Program" and the "Circle Keeper in the Prison of Peace." He "has participated in Alcoholics Anonymous."

On March 28, 2019, the trial court issued a minute order declining to recall Villeda's sentence.  The court described the facts of Villeda's crimes and noted the role his firearm played in the robberies:  "[Villeda] threatened to use the gun on the victims if they didn't comply and, in the case of victim Ever Pineda, pointed the gun at the victim in front of his wife and two children.  Defendant's actions were brazen and demonstrated extreme callousness."  After describing Villeda's role as an "active senior member of his gang," the court continued:

> "Since defendant's use of a gun played a
> significant role in the robberies, compelling
> the victims to give up their property in fear

of their lives, this court finds it proper and reasonable that the trial court imposed the gun enhancements in all of the robbery counts. . . . [F]urther . . . , despite the evidence of defendant's significant role in his gang, the trial court imposed only one gang enhancement and stayed the gang enhancements on the other three counts."

The court concluded, "Therefore, this court finds that it would not be in the interest of justice to resentence defendant Villeda as recommended by CDCR."

## DISCUSSION

On appeal, Villeda contends (1) the trial court violated his due process rights by neither appointing counsel for him nor holding a hearing, and (2) the court abused its discretion in declining to recall his sentence. We do not agree.

We review Villeda's constitutional claim on undisputed facts de novo. (*People v. Frazier* (2020) 55 Cal.App.5th 858, 864 (*Frazier*).) We review the trial court's order declining to follow the Secretary's recommendation for abuse of discretion. (*Id.*, at p. 863; *People v. McCallum* (2020) 55 Cal.App.5th 202, 211 (*McCallum*); *People v. Delson* (1984) 161 Cal.App.3d 56, 62 (*Delson*).)

1.  ***The Secretary's letter recommending recall of sentence and resentencing did not trigger a due process right to counsel or a hearing***

Section 1170(d)(1) authorizes a trial court, at any time upon the recommendation of the Secretary, to "recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence." This provision thus creates

6

" 'an exception to the common law rule that the court loses resentencing jurisdiction once execution of sentence has begun.' " (*Frazier, supra,* 55 Cal.App.5th at p. 863, quoting *Dix v. Superior Court* (1991) 53 Cal.3d 442, 455.)

Villeda contends the Secretary's letter "triggered" his "personal liberty interests in the matter" and he therefore should have been given "a meaningful opportunity to be heard" as well as the "effective assistance of counsel." Villeda acknowledges recent decisions have rejected that contention but, he asserts, "the issue of what level of procedure is required to comport with due process when the CDCR recommends an inmate for resentencing[ ] should be revisited."

In *Frazier*, our colleagues in Division 7 held the Secretary's filing of a section 1170(d)(1) recommendation for recall and resentencing does not trigger a due process right to counsel for an indigent defendant. (*Frazier, supra*, 55 Cal.App.5th at pp. 865, 869.) Presiding Justice Perluss noted "nothing in section 1170, subdivision (d)(1), authorizes appointment of counsel following the Secretary's recommendation for recall and resentencing." In response to Frazier's argument that "appointment of counsel is required as a matter of due process at this 'critical stage' of a criminal proceeding to marshal necessary evidence and address at a hearing any reservations the court may have about the Secretary's recommendation," the court provided "a brief overview" of the constitutional right to counsel. (*Id.* at p. 864.)

The *Frazier* court stated, "[T]he Sixth Amendment right to counsel at critical stages of a criminal proceeding through sentencing does not apply to postjudgment collateral challenges." For example, the court said, "In a habeas corpus proceeding the right to counsel and a hearing is triggered only after the petitioner has made a prima facie factual showing that,

7

if unrebutted, demonstrates entitlement to relief." (*Frazier*, *supra*, 55 Cal.App.5th at pp. 865-866.) In contrast, the court explained, the Secretary's request for recall and resentencing under section 1170(d)(1) "provides no statutory entitlement to relief to the inmate even when the court credits the postconviction facts identified in the Secretary's recommendation materials." (*Frazier*, at p. 866.) "[T]he Secretary's recommendation letter is but an invitation to the court to exercise its equitable jurisdiction." (*Ibid*.) Our Supreme Court denied review in *Frazier*. (Review den. Jan. 20, 2021, S265660.)

Our colleagues in Division 7 also have held a trial court is not required to hold a hearing before acting on a recommendation by the Secretary for recall and resentencing. (*McCallum*, *supra*, 55 Cal.App.5th at pp. 206, 211-216. See also *Delson*, *supra*, 161 Cal.App.3d at pp. 60-61.) As Justice Feuer stated, section 1170(d)(1)'s statutory language, "read in the context of section 1170 as a whole, shows the Legislature did not intend to require a trial court to hold" such a hearing. "It is up to the Legislature to address in the first instance whether an inmate should be afforded a hearing in response to a recommendation by the [S]ecretary for recall and resentencing." (*McCallum*, at p. 206.)[4]

---

[4] In *McCallum*, the defendant—through counsel— had expressly "requested an opportunity to respond to the [S]ecretary's recommendation" with "possible briefing and presentation of evidence." (*McCallum*, *supra*, 55 Cal.App.5th at p. 216.) McCallum sought "to submit additional information showing his rehabilitation and reentry plans." (*Id*. at p. 217.) In light of the trial court's statement that it was declining to recall McCallum's sentence at least in part because it viewed his "family and community support" as " 'tenuous, with no identifiable base of support,' " the *McCallum* court concluded "the trial court abused its discretion in denying McCallum an opportunity to present information relevant to the [S]ecretary's

8

We decline Villeda's invitation to depart from the sound reasoning of these authorities. (See *Delson*, at p. 61 ["there is a long-standing practice of ex parte consideration of such a Department of Corrections' [report], dating back to [section 1170(d)(1)'s predecessor]"].)

2.    ***The record does not demonstrate the trial court abused its discretion***

Villeda contends the trial court "did not consider any postconviction factors," "did not understand the full scope of sentencing options with regard to the firearm enhancements," and "failed to consider the scheme and spirit of the law." Villeda argues the court was "unaware of its discretionary powers." The record does not support these contentions.

Section 1170(d)(1) provides (in pertinent part),

> "The court may consider postconviction factors, including, but not limited to, the inmate's disciplinary record and record of rehabilitation while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the inmate's risk for future violence, and evidence that reflects that circumstances have changed since the inmate's original sentencing so that the inmate's continued incarceration is no longer in the interest of justice."

The statute says "may," not "must." Moreover, as the *Frazier* court noted, "nothing in section [1170(d)(1)] requires

recommendation." (*Id*. at pp. 206-207.) Here, nothing in the record shows Villeda sought to present any evidence to the trial court. Nor on appeal does he suggest what he could have submitted to support a recall of his sentence.

9

the court to state its reasoning when declining to exercise its discretion in response to the Secretary's recommendation." (*Frazier*, *supra*, 55 Cal.App.5th at p. 868.)[5] That the court here did not specifically refer to Villeda's conduct in prison does not mean the court didn't consider it. The pluses and minuses of Villeda's behavior over the previous eight years[6] are a wash at best. While he had no pending disciplinary actions and had not "received any Custodial Counseling Chronos," he remained "an active member of the Varrio Alondra 13 Sureno disruptive Security Threat Group." While he had received a report of "satisfactory work performance" for a three-month period in 2016, the Secretary's letter contains no information about Villeda's work performance during the remaining seven years and nine months. He had been "found guilty" of possession of a weapon in 2012 and participated in hunger strikes in 2012 and 2013. Villeda did complete his GED, which is commendable. The Secretary's letter notes "satisfactory progress" in a "[b]asic [e]ducation" program for a four-month period in 2018 but provides no other information about the nature or status of that course of study.

As for age and "diminished physical condition," Villeda was 26 when he committed the robberies and 36 when the court declined to recall his sentence. Nothing in the record suggests he is infirm. As far as "changed" "circumstances," again, Villeda

<hr />

[5] In *Frazier*, the trial court had issued a minute order stating only it had "received and reviewed" the Secretary's letter and it "declines to exercise its discretion pursuant to that section. The original sentence is to remain in full force and effect." (*Frazier*, *supra*, 55 Cal.App.5th at p. 863.)

[6] Villeda says he was "received into the prison on February 14, 2011." The Secretary's letter was dated February 11, 2019.

has worked, earned his GED, and participated in programs, but he remains involved with his gang. As for "time served," when the court ruled, Villeda had served about eight years of a 38-year sentence.

As the Attorney General notes, the Secretary's letter did not "recommend[ ] [Villeda's sentence] for reconsideration . . . because of his postconviction conduct," as Villeda contends. To the extent the Secretary's letter sets forth any reason for his recommendation, it was the 2018 amendments to the firearm enhancement statutes. Before 2018, the firearm enhancements contained in section 12022.53—the basis for 20 years of Villeda's 38-year sentence—were mandatory. Effective January 1, 2018, the Legislature gave trial judges discretion to strike or dismiss the enhancements " 'in the interest of justice' " under section 1385. (*People v. Flores* (2021) 63 Cal.App.5th 368, 376.) "The factors a trial court must consider when determining whether to strike a gun enhancement 'are the same . . . the trial court must consider when handing down a sentence in the first instance.' " (*Id*. at p. 377.) "Among those factors are whether ' "[t]he crime involved great violence, . . . threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness" ' and whether ' "[t]he defendant has engaged in violent conduct that indicates a serious danger to society." ' " (*Ibid*., italics omitted.)

Where, as here, a discretionary power is statutorily vested in the trial court, the exercise of that discretion must not be disturbed on appeal except on a showing the court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*McCallum*, *supra*, 55 Cal.App.5th at p. 211; *People v. Gibson* (2016) 2 Cal.App.5th 315, 324-325; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.) " 'The abuse of discretion standard "involves

abundant deference" to the court's ruling.' " (*McCallum,* at
p. 211, quoting *People v. Jefferson* (2016) 1 Cal.App.5th 235,
242-243. See also *Frazier, supra,* 55 Cal.App.5th at pp. 862-863,
868-869 [court did not abuse its discretion in declining to recall
sentence for defendant convicted of assault with a deadly weapon
even though she was "nearly 70 years old, had demonstrated
exemplary behavior while in prison; had completed . . . multiple
educational courses . . . ; and had served as a role model for
other students in the prison population"].)

## DISPOSITION

We affirm the superior court's order declining to recall
Allan Villeda's sentence and to resentence him.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EGERTON, J.

We concur:



EDMON, P. J.



LAVIN, J.



12